UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jonathan Hall,  Civ. No. 17-2120 (PAM/SER)

      Plaintiff,

v.  **MEMORANDUM AND ORDER**

Soo Line Railroad Company,
d/b/a Canadian Pacific Railway,

      Defendant.

---

This matter is before the Court on Defendant's Motion to Dismiss. For the following reasons, the Motion is denied without prejudice.

**BACKGROUND**

Plaintiff Jonathan Hall worked as a conductor at Defendant Canadian Pacific Railway ("CP")[1] for slightly more than one year. (Compl. (Docket No. 1) ¶¶ 12-13.) On October 3, 2015, Hall injured his back while working. (Id. ¶ 16.) The parties vehemently dispute the injury—both how it occurred and how serious it was. It is undisputed, however, that Hall did not report the injury to his supervisor on that day.

Hall went to the emergency room the following day, October 4, 2015. (Id. ¶ 18.) He was prescribed pain medication and the physician told him not to take certain of the medicines while working. (Donesky Decl. (Docket No. 11) Tab A (Hall Dep.) at 164-66; see also Fuller Aff. (Docket No. 14) Ex. 10 at 8 ("[The doctor] told me to only use those

---

[1] Plaintiff's actual employer was Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific Railway, not Defendant Soo Line Railroad Company.

[pills] on my days off.").) Hall did not report the injury to CP that day, either, and in fact he continued working. (Compl. ¶ 23.)

On October 15, Hall went to the emergency room again. (Id. ¶ 25.) The doctor prescribed additional medication and told Hall not to work temporarily. The next day, Hall visited a general practitioner, who gave Hall workers' compensation paperwork. Hall contends that he tried to call his supervisor on October 15 but did not reach him; according to Hall, he slipped the workers compensation paperwork under his supervisor's door on October 16 after his doctor's visit. (Id. ¶¶ 28-29.) Hall's supervisor, Chris Danula, did not receive the papers until October 18. (Id. ¶ 30.) Danula called Hall that day; the call was recorded and a transcription is in the record. (Fuller Aff. Ex. 10.) During the call, Hall described the injury and his medical treatment; his description of the injury conflicts with the Complaint's depiction of the injury as very minor.

CP's rules require its employees to report any injury sustained on the job "immediately." (Compl. ¶ 37 (quoting CP's Gen. Code of Operating Rules ("GCOR") 1.2.5).) Because CP did not think that Hall reported his injury immediately after he suffered it, CP scheduled a disciplinary hearing as the parties' Collective Bargaining Agreement required. (Fuller Aff. Ex. 13.) The hearing was held on November 3, 2015; Hall appeared, was represented by his union representative, testified, examined witnesses, and presented evidence. (Fuller Aff. Ex. 17; Donesky Decl. Tab Q.)[2] After the hearing, the hearing officer determined that Hall had violated GCOR 1.2.5. (Donesky Decl. Tab

---

[2] Plaintiff's attorney's affidavit contains only the first two pages of the hearing transcript. Defendant's attorney's declaration contains the entire transcript.

BB.) Another reviewer then examined the hearing officer's conclusions and the record. That reviewer determined that Hall had violated GCOR 1.2.5 and that, in light of Hall's previous disciplinary history and his short employment with CP, the appropriate punishment was dismissal. (Id.) After several other reviewers concurred in the recommendation, CP terminated Hall's employment on November 17, 2015. (Fuller Aff. Ex. 15.)

Hall appealed his termination to CP, and that appeal was denied. Hall also filed for arbitration under the Railway Labor Act, which remains pending.

After the disciplinary hearing but before the decision issued, Hall also filed a complaint under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, with the Occupational Safety and Health Administration ("OSHA"). (Donesky Decl. Tab JJ.) OSHA investigated, and on August 8, 2016, it dismissed Hall's complaint because it found that the complaint was unsupported by reasonable cause. (Id. Tab KK.) Hall objected to the dismissal and sought a de novo hearing before an Administrative Law Judge ("ALJ"), as provided in the regulations. (Id. Tab LL.) The parties then engaged in extensive discovery, including expert discovery and multiple depositions. (See Fuller Aff. Exs. 18-20 (depositions for ALJ proceeding).)

In May 2017, Hall moved the ALJ for a partial summary decision.[3] At about the same time, CP asked the ALJ to exclude two of Hall's expert witnesses who had been disclosed after the discovery deadline passed. (Donesky Decl. Tab QQ.) On Thursday, June 15, 2017, the ALJ granted CP's motion to exclude the expert witnesses. (Id. Tab

---

[3] Neither party included this motion in the supporting documents provided to the Court.

RR.) On Friday, June 16, 2017, the ALJ denied Hall's motion for partial summary determination. (Id. Tab SS.) The hearing in front of the ALJ was scheduled for Monday, June 26. But on Monday, June 19, Hall instead filed this federal lawsuit, claiming that CP violated the FRSA by retaliating against him for reporting his work-related injury.

CP now moves to dismiss. CP first asks that the Court find that Hall has waived his right to file a federal lawsuit by litigating the propriety of his termination before the ALJ. CP also contends that Hall has failed to state a claim on which relief can be granted, or in the alternative that CP is entitled to summary judgment. CP argues that pre-discovery summary judgment is appropriate because the record before the ALJ was ostensibly fully developed.

**DISCUSSION**

**A.     Waiver**

The FRSA provides that a railroad employee challenging an employment action must pursue administrative remedies through the Department of Labor, which includes OSHA. 49 U.S.C. § 20109(d). Although this remedy is initially exclusive, the FRSA also provides a mechanism for the employee to bring a federal lawsuit:

> [I]f the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States . . . .

Id. § 20109(d)(3). An employee who receives a final decision on his administrative complaint, however, may only seek review of that decision in the Court of Appeals. Id. § 20109(d)(4).

CP asks the Court to determine that an employee who participates in the administrative review process, including engaging in discovery and motion practice, at some point waives his right to bring a lawsuit. CP points to the expenses it incurred defending the administrative action, and the prejudice it will suffer from the now two-year time period between Hall's injury and discovery in this matter. According to CP, equitable principles should bar Hall from pursuing this litigation.

But no federal case has held that the statutory right to bring a federal suit is subject to waiver. As another Judge in this District noted, although it is

> extremely wasteful to permit a plaintiff to do what [the railroad employee] has done—that is, to pursue an administrative process almost to its conclusion . . . and then start all over again in federal court[,] . . . based on the plain language of § 20109(d)(3) and the weight of the case law interpreting that provision, the Court has no choice but to hold that [the employee] did not waive his right to bring this lawsuit.

Gunderson v. BNSF Ry. Co., 29 F. Supp. 3d 1259, 1262 (D. Minn. 2014) (Schiltz, J.). The plaintiff in Gunderson litigated before the ALJ for four years, including participating in a six-day evidentiary hearing and receiving an unfavorable ruling from the ALJ, before filing a lawsuit during the 10-day period between that ruling and the date the ALJ's decision became a final order under 29 C.F.R. § 1982.114(a). Gunderson v. BNSF Ry. Co., 850 F.3d 962, 967 (2017).

CP relies solely on the Eighth Circuit's opinion in Gunderson for its argument here. See id. But Gunderson did not hold that a railroad employee can waive his federal-court rights in some circumstances. Rather, the court merely stated that it disagreed with Gunderson's argument that an employee could never waive his right to bring a lawsuit.

5

Id. at 972. Noting that the Supreme Court has in general presumed the applicability of waiver, and that the FRSA allows for equitable remedies, "it is likely that common law principles of laches may apply to cut off an employee's right to sue, or at least to seek equitable relief, some time after the § 20109(d)(3) action accrues." Id. Thus the court did not definitively determine that waiver was appropriate in that case or any other, instead reserving the question for another day because BNSF had not developed the record on waiver before the district court. Id. Indeed, one member of the panel did not join the opinion's discussion of the waiver issue because it was "pure dicta, on an issue raised sua sponte." Id. (Colloton, J., concurring).

CP has attempted to do here what BNSF failed to do in Gunderson: develop a record of delay and prejudice. See id. (quoting Brown-Mitchell v. Kan. City Power & Light Co., 267 F.3d 825, 827 (8th Cir. 2001)). And although CP's argument is attractive, this is not the appropriate case to determine that a railroad employee can waive the right to file a lawsuit. Hall actively pursued his administrative remedies for less than a year, from the OSHA decision in August 2016 until mid-June 2017. While it is undoubtedly frustrating to spend time and money defending an administrative action, all of the discovery the parties engaged in before the ALJ hearing will be applicable to this proceeding. The discovery process here will therefore be short, reducing costs and the consequent prejudice to CP considerably. CP's Motion on this point is denied.

**B.     Motion to Dismiss/Summary Judgment**

CP also contends that the Court can rely solely on the record before the ALJ to determine that Hall's dismissal was not in retaliation for engaging in protected activity

6

under the FRSA.

The FRSA prohibits rail carriers from retaliating against employees who engage in safety-related protected activities. 49 U.S.C. § 20109. As relevant here, the FRSA provides that a rail carrier "may not discharge . . . or in any other way discriminate against" an employee for, lawfully and in good faith, reporting a workplace injury. Id. § 20109(a)(4). To prove unlawful retaliation, the employee must show that (1) he engaged in a protected activity, (2) the rail carrier knew that he engaged in that activity, (3) he suffered an adverse employment action, and (4) the circumstances raise an inference that the protected activity was a "contributing factor" in the adverse employment action. See id. § 20109(d)(2)(A)(i); 29 C.F.R. § 1982.104(e)(2). Even if the employee makes that showing, the rail carrier may avoid liability by furnishing "clear and convincing evidence" that it would have taken the same adverse employment action regardless of any protected activity. 29 C.F.R. § 1982.104(e)(4).

CP contends that the "contributing factor" requirement means more than "but-for" causation. But while the employee "must demonstrate more than a mere factual connection between his injury report and his discipline," he need not "conclusively demonstrate [the company's] retaliatory motive to establish a prima facie case." Heim v. BNSF Ry. Co., 849 F.3d 723, 727 (8th Cir. 2017). Rather, the employee "must demonstrate that [the company's] discipline was, at least in part, intentional retaliation prompted by his injury report." Id. Even the case CP relies on most heavily describes the "contributing factor" standard as "lenient." Kuduk v. BNSF Ry. Co., 768 F.3d 786, 792 (8th Cir. 2014).

7

FRSA requires an employee to show that the employee intended to retaliate against him because he reported an injury. But an employee need not demonstrate that retaliation was the only motive, and in any event the existence of a retaliatory motive is necessarily record-specific. See BNSF Ry. Co. v. U.S. Dep't of Labor Admin. Review Bd., 867 F.3d 942, 947 (8th Cir. 2017) ("[I]ntentional discrimination may be inferred 'from evidence the falsity of the employer's explanation.") (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)).

In this case, CP's rules require that an injured employee file an injury report "immediately" and thus any discipline for violating this rule will almost by definition be caused by the filing of an injury report. There is therefore no question that Halls' termination was caused by the filing of his injury report. The question is whether CP retaliated against him for reporting that he was injured, or legitimately disciplined him for failing to comply with CP's rules. All of these issues depend on an evaluation of the facts in the record, and Hall insists that the record is not as fully developed as CP contends. For example, in this proceeding Hall will likely be allowed to present expert testimony, which is missing from the administrative record due to the ALJ's determination that Hall's expert designations were untimely. If Hall's evidence is insufficient as a matter of law to establish his prima facie case, CP can move for summary judgment at that time.

The determination that summary judgment is premature is not, however, an invitation for the parties to engage in extensive discovery in this matter. Both parties have taken multiple depositions and engaged in document production. There is no need

8

to reinvent the wheel in this proceeding. The Court expects any scheduling order to reflect a greatly truncated discovery schedule, so that this dispute, which has already been litigated for two years, can be resolved.

**CONCLUSION**

CP has not established that Hall waived his right to bring this lawsuit, nor has it established that summary judgment on his FRSA is appropriate at this stage of the litigation. Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss and/or for Summary Judgment (Docket No. 7) is **DENIED without prejudice**.


Dated:  October 19, 2017                             *s/ Paul A. Magnuson*
                                                                    Paul A. Magnuson
                                                                    United States District Court Judge